UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHIRLEY MORRIS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-2321 |
| | § | |
| LIBERTY LIFE ASSURANCE COMPANY | § | |
| OF BOSTON, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Pursuant to motions by the parties, the court agreed to decide the merits of this case based on trial briefs and a stipulated record submitted by the parties. Dkts. 11 and 12. The stipulated record and parties's briefs have been submitted, and therefore the case is ripe for decision. Dkts. 14, 15, 16, 19, 20 & 21. After considering the parties' arguments, the stipulated facts, and the relevant case law, the court is of the opinion that the plaintiff's request for relief should be DENIED.

**BACKGROUND**

In this case, the plaintiff Shirley Morris claims that in denying her long-term disability (LTD) benefits, Liberty Life used unfair claims practices.[1] She appeals Liberty's decision to the court under 29 U.S.C. § 1132(a)(1)(B).[2] Morris worked for Chase Manhattan Bank as a Junior Loan Operations

---

[1] Both parties agree that the plan in question is an ERISA plan.

[2] The civil enforcement section of ERISA provides that:

(a) Persons empowered to bring a civil action. A civil action may be brought– (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Administrator.  She enrolled in the short-term and long-term disability benefits Chase offered its employees through Liberty.  In February of 2001, Morris applied for and initially received short-term disability (STD) benefits.  However, after further review of Morris's medical records and Functional Capacity Examination (FCE), Liberty determined that Morris did not meet the plan's definition of disabled.  Under the plan, in order to qualify as disabled, a covered person must be unable to "perform all of the material and substantial duties of [her] occupation on an Active Employment basis because of an Injury or Sickness."[3]  After Liberty denied Morris's appeal of the decision, Morris filed suit.  On April 8, 2003, pursuant to FRCP 68,[4] Judge Lee Rosenthal entered judgment for Morris.  The court ordered that (1) Liberty pay Morris for past STD benefits due from 6/23/2001 until 7/15/2001; (2) Liberty pay Morris for LTD benefits due from 7/16/2001 until 4/15/2003; (3) Liberty continue to pay Morris LTD benefits from 4/16/2003 until 7/15/2003; and (4) Liberty review Morris for consideration of LTD benefits due after 7/16/2003.[5]

---

29 U.S.C. § 1132(a)(1)(B).

   [3] Dkt. 14, Plaintiff and Defendant's Joint Stipulation of Record, Exhibit 1, at JE006. Since the record was filed in docket entries 14, 15, and 16, but is bates numbered consecutively throughout, all references to the record will be by bates number only for ease.

   [4] FRCP 68 reads in relevant part:

   Offer of judgment.  At any time more than 10 days before the trial begins, a party
   defending against a claim may serve upon the adverse party an offer to allow
   judgment to be taken against the defending party for the money or property or to
   the effect specified in the offer, with costs then accrued. If within 10 days after the
   service of the offer the adverse party serves written notice that the offer is
   accepted, either party may then file the offer and notice of acceptance together
   with proof of service thereof and thereupon the clerk shall enter judgment.

FRCP 68.

   [5] *Morris v. Liberty Life Assurance*, No. H-02-3410 (S.D. Tex April 8, 2006) at Dkt. 20.

Under the terms of the policy, the definition of disabled changed after the covered person reached 24 months of continuous coverage. The post-24 months definition presented a tougher standard under which to qualify as disabled. To continue to receive benefits once the pre-24 months LTD benefits eligibility period expired on July 6, 2003, Morris had to show that she was "unable to perform, with reasonable continuity, all of the material and substantial duties of [her] own <u>or any other gainful occupation for which [she] is or becomes reasonably fitted by training, education, age and physical and metal capacity</u>."[6] The main difference between the definitions is the addition of an "escape clause" providing that if the covered person can perform any other job, then she does not qualify as disabled. Liberty notified Morris of the post 24-months LTD benefit definition several months before her pre-24 months benefits were due to expire.[7] Accordingly, in July 2003, Liberty began an investigation, as detailed below, to determine Morris's eligibility for LTD benefits. After a thorough inquiry, Liberty concluded that Morris did not qualify for LTD benefits. Morris appealed the decision unsuccessfully, and Liberty terminated her LTD benefits on January 23, 2004.[8]

**A.     Timeline of the Investigation**

The following is a summary of the materials Liberty reviewed, both for the STD and LTD determinations. Bates number references are included within the summary. Morris's observations regarding the findings or selections she emphasized in her pleadings are added in italics for clarity.

---

[6] JE006 (emphasis added).

[7] JE 368-69.

[8] JE 912-17.

1/5/2001      Last Day of Work for Chase [JE 535]

2/9/2001      Disability Claim Form Submitted [JE 535-41]
Dr. Lourice Abdelmelek, Morris's primary physician [JE 899-906]
- Primary diagnosis of uncontrolled hypertension and diabetes milletus, sleep disorder, heart disease
- Severe limitation of functional capacity
- *Physical impairment - Class 5 - severe limitation of functional capacity; incapable of minimum activity*
- *Cardiac Impairment - Class 3 - Marked Limitation*

2/20/2001      Liberty requested medical documentation from Dr. Henry Small, Morris's treating orthopedic surgeon (received 3/8/2001) [JE 892]

2/28/2001      Function Capacity Examination (FCE) by Frank Montegue [JE 847-60]
- Morris able to perform pushing or pulling at a sedentary level
- Performed keyboarding and fingering/handling at a below competitive level
- Continued sitting tolerance of one hour
- Sedentary level capacity with lifting restrictions of less than 5 lbs at bench and shelf heights
- Rest break throughout the day required
- *Morris is consistent with reported and demonstrated symptomatology*
- *Overall work endurance/tolerance - below competitive level*
- *Could not tolerate positioning for any other activities i.e., lifting, stooping, kneeling, and crouching*
- *Sitting tolerance during exam of one hour, creating complaints of intense pain*
- *Recommended to continue disability status*

3/8/2001      Dr. Henry Small, Morris's treating orthopedic physician [JE 866-91]
- Based on the results of Morris's FCE, she is unemployable in any occupation and recommended continued disabled status

6/20/2001      Dr. Surendra Jain, cardiologist, Morris referred by Abdelmelek [JE 742-50]
- Found no restrictions from cardiovascular systems, but does have diagnosis of severe hypertension, palpitations, congestive heart failure, and hyperlipidemia

6/20/2001      Elizabeth Clark, of Chase [JE 764 & 752]
- Advised Liberty that Morris could change positions frequently at her job, going from sitting to standing as needed.

6/22/2001      Liberty terminated Morris's STD benefits [JE 736-38]

8/1/2001      Morris appealed the termination to Liberty. [JE 693-98]

| | |
|---|---|
| 9/24/2001 | Review and report of Betty Todd, R.N., Liberty's nurse consultant [JE 630-31]<br>• Found that Morris's blood sugar and blood pressure readings were not disabling in light of the opinions of Morris's cardiologist and the FCE. |
| 10/1/2001 | Liberty Life denied appeal. [JE 622-27] |
| 10/1/2002 | Morris sued Liberty. *See Morris v. Liberty Life*, No. H-2-3410. |
| 4/8/2003 | Judgment entered for Morris. *See Morris v. Liberty Life*, No. H-2-3410, Dkt. 20. |
| 4/21/2003 | Liberty notified Morris of the definition of disabled she would be required to meet in order to qualify for LTD benefits past 7/6/2003. [JE 368-69] |
| 5/2003 | Liberty requested updated medical records from Morris's physicians of record:<br>• Dr. Erik Orzeck, internist [JE 453-57]<br>    Had not treated Morris since April 2002[9]<br>• Drs. Sam Weber, and Ron Moses, ENT [JE 474-98]<br>    Only restrictions and limitations were to avoid mold, mildew, and cigarette smoke<br>• Dr. Lourice Abdelmelek [JE 374]<br>    Limitations and restrictions are no driving until well rested, no heavy lifting, no climbing stairs, no sitting for a long time<br>• Dr. Henry Small [JE 499-509]<br>    Permanently and industrially disabled<br>    Permanently restricted<br>• Bellaire Eye & Laser Center [JE 362-67]<br>    No restrictions and limitations |
| 5/13/2003 - 5/18/2003 | Investigators hired to observe Morris. [JE 439-47]<br>• Claimant appeared to ambulate in a normal manner, without restrictions or the use of visible medical devices. |
| 7/7/2003 | Deadline - Morris now under post-24 month definition for LTD benefits |
| 7/8/2003 | Letter to Morris from Liberty that information being gathered to assess her continued eligibility for benefits. [JE 368-69] |
| 7/15/2003 | Review and report of Dr. John Holbrook, FACEP (Fellow of the American College of Emergency Physicians,) Liberty's expert, regarding Morris's restrictions and limitations in light of her medical records. [JE 341-48]<br>• Morris's uncontrolled diabetes and hypertension provide no rationale for impairment currently |

---

[9] Although Dr. Orzeck does state in his response that he had not seen Morris since April 2002, his medical records indicate that he saw her again in May 2002.  JE 466.

| | |
|---|---|
| 7/23/2003 | Review and report of Dr. Richard Corzatt, orthopedic surgeon, Liberty's expert, regarding Morris' restrictions and limitations in light of her medical records [JE 335-37]<br>• Morris has functional capacity to sit 6-8 hours, changing positions as necessary, to stand 2-4 hours, changing positions as necessary, to lift up to 10 pounds using both arms, and to use a keyboard for 20 minutes with a 10 minute break (5 hours/8 hour workday) |
| 8/4/2003 | Liberty contracted for a pharmacy check to canvas pharmacies in Morris's area for prescriptions held by her. Numerous prescriptions found. [JE 263-65] |
| 8/20/2003 | Independent Medical Examination (IME) by Dr. Frank Barnes [JE 292-306]<br>• Morris has capacity for sedentary to light occupation requiring 6-8 hours of sitting with breaks as needed, standing 4 hours for no more than 15 minutes at a time, lifting up to 20 pounds with both hands, and use of a keyboard with appropriate breaks. |
| 8/27/2003 | Liberty sent Dr. Small the IME results and requested that he respond to areas with which he disagreed. He did not answer. [JE 291] |
| 9/9/2003 | Dr. Abdelmelek, Morris's treating physician [JE 244]<br>• Morris is incapacitated and unable to work, because she is taking several medications which have side effects that would make her drowsy, etc.<br>• Suffers from chronic back pain, secondary to a herniated disc in the lumbar spine<br>• Also has diabetes and hypertension |
| 9/10/2003 | Transferable Skills Analysis by MPO Consulting [JE 060-62]<br>• Identified several vocational alternatives with starting wages from $16,000 - $32,000 per year |
| 9/16/2003 | Liberty asked Dr. Holbrook (see above) to review Dr. Abdelmelek's new information of 9/9/2003 [JE 231-32]<br>• Sees no change and no evidence of impairment, additionally the medication side effects would not cause a level of impairment that would preclude her ability to work |
| 9/19/2003 | Liberty sent Morris a letter stating that Morris had been found to be capable of performing occupations outside her previous profession, and therefore didn't meet the definition of disabled. [JE 233-36] |

11/13/2003   Morris sent letter to Liberty appealing the decision [JE 153-56] and enclosing:
- 10/14/2003, Dr. Henry Small notes and MRI's [JE 166-75]
    Doesn't believe that she could maintain gainful employment
- 11/5/2003, letter from Dr. Warren B. Dailey [JE 162-63]
    FCE demonstrated that Morris was totally disabled, and that disability continued to date
- 11/6/2003, notes from Dr. Donna Calabrese (partner of Dr. Abdelmelek) [JE 164-65]
    Found mild obstructive sleep apnea, allergies. poorly controlled hypertension, Type II diabetes, and gastroesophageal reflux
- 7/10/2003, Sleep Study [JE 181-92]
    Found mild sleep apnea and probable insomnia secondary to chronic pain

11/28/2003   Liberty asked Dr. Holbrook (see above) to review new records [JE 69-72]
- Insufficient evidence of an impairment that would preclude Morris's ability to work a full-time sedentary job

12/3/2003   Liberty asked Dr. Corzatt (see above) to review new records [JE 73-75]
- Although Morris has a positive MRI, the knee pathology does not prevent a sedentary occupation, no other new information to change his earlier opinion

1/23/2004   Liberty informed Morris that they are maintaining their decision to deny LTD benefits effective 9/20/2003. [JE 912-17]

**B.   Procedural Posture**

Morris exhausted her administrative remedies by filing a timely appeal with Liberty. She initiated suit in federal court in July of 2005. Dkt. 1. In May 2006, the parties made a joint motion to the court that it rule based on the parties' stipulated record and briefs. Dkt. 11. The court granted the motion. Dkt. 12. The stipulated record and both parties' briefs were filed. Therefore the case is ripe for ruling.

### STANDARD OF REVIEW

The role of the district courts in the appellate process over ERISA claims is quite constrained. "When the ERISA plan vests the fiduciary with discretionary authority to determine eligibility for

benefits under the plan or to interpret the plan's provisions, 'our standard of review is abuse of discretion.'" *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 269 (5th Cir. 2005) (quoting *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998)). The Liberty plan expressly grants Liberty the sole discretion to construe the policy terms and to determine eligibility.[10] Therefore the court reviews Liberty's decisions for an abuse of discretion.

When however, the plan administrator is also the insurer, the decision may be tainted by a conflict of interest. *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003). In that event, the court employs a sliding scale of deference to the administrator's decision. *Id.* The fact that the administrator "potentially benefits from every denied claim . . . must be weighed as a factor in determining whether there is an abuse of discretion." *Vega v. Nat'l Life Ins. Svcs.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc) (internal citations omitted). But, even in the face of a conflict of interest, the court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Id.* at 297. In fact, the Fifth Circuit has found that in an inherent conflict of interest where the administrator was also the insurer, the administrator was entitled to only a modicum less deference. *MacLachlan*, 350 F.3d at 479; *Lain v. Unum Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir. 2002). Here, Liberty freely admits that it has a financial interest in the amount of money paid out under the policy. Dkt. 19, at 10. No other conflict is alleged by the plaintiff. Therefore the court should review the administrator's decision under an abuse of discretion standard, giving Liberty a modicum less deference because of its conflict of interest.

---

[10] JE 23.

**Analysis**

In the case at bar, Morris claims that Liberty abused its discretion when it terminated her LTD benefits. Her arguments center around Liberty's interpretation of her medical records and not around any interpretation of the plan itself. She alleges that Liberty viewed each of her ailments independently rather than contemplating the impact of those ailments in the aggregate. Further, she alleges that Liberty ignored findings and results that supported her claim, while at the same time and often in the same document quoting findings and results that opposed her claim. For example, Morris cites her FCE to support the fact that she cannot work. She points to the fact that the report found repeated symptomology and recommended continuing her disability status. Liberty interpreted the same report to indicate that as long as the job was sedentary to light, allowing for changes in position, Morris could successfully work. According to Morris, because Liberty cherry-picked which information to credit and which to discount, and because Liberty did not consider her medical condition as a whole, it abused its discretion in terminating her LTD benefits.

Liberty argues simply that it thoroughly investigated Morris's medical records. It points to medical evaluations by Drs. Holbrook, Crozatt, Jain, and Abdelmelek. Additionally Liberty cites Morris's FCE, the IME conducted by Dr. Barnes, and the Transferable Skills Analysis. Liberty responds to Morris's allegations of cherry-picking as unfounded and points to Dr. Holbrooks continued and thorough citation to the FCE. Moreover, Liberty points to statements made by Morris's own physicians that support Liberty's findings. Lastly, Liberty reminds the court that it need only meet the substantial evidence burden of proof to support its findings.

"In reviewing a plan for abuse of discretion, the district court first must determine whether the administrator's interpretation is legally correct; if it is not, the court must decide whether the

decision was an abuse of discretion." *MacLachlan*, 350 F.3d at 481. If the court finds that the administrator's "interpretation of the plan was legally correct, the inquiry is over," and the court need not address the question of whether there was an abuse of discretion. *Ellis*, 394 F.3d at 270. Morris does not challenge Liberty's interpretation of the plan. Even were she to do so, her challenge would fail. There are three factors that a court must consider when determining whether the administrator is legally correct:

> (1) whether the administrator has given the plan a uniform construction,
> (2) whether the interpretation is consistent with a fair reading of the plan, and
> (3) any unanticipated costs resulting from different interpretations of the plan.

*Ellis*, 394 F.3d at 270. The post-24 month definition of disability under the plan is that the covered person is "unable to perform, with reasonable continuity, all of the material and substantial duties of [her] own or any other gainful occupation for which [she] is or becomes reasonably fitted by training, education, age and physical and metal capacity." Liberty does not seem to dispute that Morris is unsuited for her job as a Junior Loans Operations Administrator. Nor would it matter if it did. The policy specifies that if Morris is able to perform the material or substantial duties of "any other gainful occupation," then she is not disabled under the plan. A review of the three factors demonstrates that Liberty's interpretation of "any other gainful occupation" is legally correct.

The first factor, uniform plan construction, is neutral. Nothing in the record illustrates Liberty's other decisions regarding post-24 month disability.[11] Additionally, even were it inclined to do so, the court is expressly barred from reviewing facts outside the administrative record. *Vega*, 188 F.3d at 299. The second factor asks whether the interpretation is consistent with a fair reading

---

[11] The record is replete with evidence regarding Liberty's interpretation of its pre-24 month disability definition, but that definition does not include the "any other gainful occupation" escape clause contained in the post-24 month disability definition.

10

of the plan. The Fifth Circuit interpreted that as a plain language reading of the plan. *Ellis*, 394 F.3d at 271. It would be difficult to be any plainer than "any other gainful occupation." Liberty interprets that to mean that if Morris is capable of holding another job, then she is not disabled. Again Morris does not argue the interpretation of the definition, but argues instead that she is not capable of working at any other job. So, the second factor weighs in favor of Liberty. The third factor also weighs in favor of Liberty. It asks whether a different interpretation of the plan would lead to unanticipated costs. If Liberty had to continue LTD benefits indefinitely to covered persons who were capable of working, it would cost the company a significant amount of money and likely change the amount Liberty had to charge in premiums. Liberty's interpretation of its definition of disabled is legally correct.

Under the case law, having made this determination the court can halt its inquiry. *See Ellis*, 394 F.3d at 272. However, the main issues brought by the parties in this case rest upon an examination of the facts in the record. Thus, it is worth reviewing the next question. For the second step, the court must decide if the administrator acted arbitrarily or capriciously. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994). An arbitrary decision is one that is made "without a rational connection between the known facts and the decision or between found facts and the evidence." *Lain*, 279 F.3d at 342. The administrator's decision must be based on concrete evidence in the administrative record that supports the denial. *Id.* The evidence may be disputed, and the administrator may give it the weight he deems appropriate. *Id.*; *Gooden v. Provident Life & Accident Ins.*, 250 F.3d 329, 334 (5th Cir. 2001). Liberty points to seven specific items it believes support the decision to terminate benefits.

    1)    Three medical record reviews by John Holbrook, M.D.;

      2)       Two orthopedic medical record reviews by Richard Corzatt, M.D.;
      3)       Independent Medical Examination by Frank Barnes, M.D.;
      4)       Functional Capacity Examination;
      5)       Functional Capacity Evaluation completed by Surendra Jain, [M.D.];
      6)       Transferable Skills Analysis; and
      7)       Restrictions and limitations imposed by Plaintiff's treating physician, Lourice Abdelmelek.[12]

Further, the record shows that Liberty had doctors review each updated medical report they received from Morris. They hired investigators to conduct surveillance of Morris's ease of everyday movement. And, they obtained pharmacy records for all of the pharmacies in the area surrounding Morris's place of residence. Liberty has demonstrated a rational connection between the evidence in the record and its decision to terminate LTD benefits.

Morris argues that Liberty did not appropriately weigh her doctors' reports on her condition. She stresses that Liberty cites only parts of the records but not all of the records. She alleges that their biased review of her records amounts to an abuse of discretion. The Fifth Circuit disagrees. *Sweatman*, 39 F.3d at 601-03. In *Sweatman*, the plaintiff argued that MetLife "attached insufficient weight to her doctors' opinions and too much weight to the results of its own investigation." *Id.* at 601. Like Morris, Sweatman also argued that MetLife "selectively relied on only part of her treating physicians' diagnoses." *Id.* at 602. In that case Met Life reviewed all Sweatman's records, hired independent experts to review those records and any updates, hired an investigator to investigate Sweatman, and reviewed the entire record twice. *Id.* at 601. The Fifth Circuit found that "[t]he record generated by these evaluations contains *ample* evidence to support MetLife's finding that Sweatman was not permanently disabled." *Id.* at 602 (emphasis added). Here, Liberty has

---

[12] Dkt. 21, at 1.

performed an almost identical investigation to MetLife's.[13] Their efforts, like MetLife's, demonstrate that their decision was not arbitrary and capricious.

Morris also contends that Liberty has not met the substantial evidence burden of proof in denying her LTD benefits. Although this argument is predicated on the same issues discussed above, in an abundance of caution the court will briefly address it. The substantial evidence burden of proof does not, in fact, require a substantial amount of evidence. Rather, "substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis*, 394 F.3d at 273 (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 185 (5th Cir. 1985)). For the same reasons given above, the court finds that Liberty had substantial evidence that Morris was capable of other gainful employment. If the administrator's denial of benefits "is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Id.* Therefore, since Liberty based its decision on substantial evidence and was not arbitrary and capricious, Liberty's decision to terminate LTD benefits should be upheld.

## CONCLUSION

Although, Ms. Morris clearly has health problems, Liberty has met its burden of proof. "[T]he administrator's decision [does] fall somewhere on a continuum of reasonableness—even if on the low end." *Vega*, 188 F.3d at 297. For the foregoing reasons, the court finds that the plaintiff's request for relief should be DENIED.

---

[13] Notably, in *Sweatman*, MetLife was operating under the identical conflict of interest as Liberty is here. *Sweatman*, 39 F.3d at 599.

It is so ORDERED.

Signed at Houston, Texas on October 10, 2006

_____
Gray H. Miller
United States District Judge